Kenneth HARDMAN and Judy HARDMAN, His Wife
*v.* DAIRY FARM LEASING COMPANY

CA 83-294                                    670 S.W.2d 466

Court of Appeals of Arkansas
Division II
Opinion delivered June 13, 1984

*Adams, Covington & Younes, P.A.,* by: *Donald J. Adams,* for appellant.

*Pinson & Reeves,* by: *Jerry D. Pinson,* for appellee.

LAWSON CLONINGER, Judge. This is an appeal from a decree of the chancellor, finding that a written agreement by appellants to lease twenty-four dairy cattle from appellee was valid and was not in fact a credit sale which was void for usury as set out in *Bell* v. *Itek Leasing Corp.,* 262 Ark. 22, 555 S.W.2d 1 (1977).

This agreement was signed on December 15, 1979. Appellants then took possession of twenty-four dairy cows which they had picked out and made payments pursuant to the lease agreement for a period of approximately two and one-half years. The last payment on the lease by the appellants was in May of 1982. Thereafter, the appellants filed suit alleging that the lease was not a lease but was in fact the sale of the cattle and was usurious and unenforceable. Appellee cross complained, alleging that the agreement was a valid lease and arguing that it was entitled to accelerate the remaining payments left on the five-year lease. The chancellor refused to enforce a provision for

acceleration, holding that that provision was unconscionable and unenforceable in a court of equity. He did, however, enter judgment for appellee in the amount of $17,712.14 which represented the rental owed to the date of the decree. He further held that appellee was entitled to take possession of the cattle and retain jurisdiction to establish the actual damages sustained by appellee. Appellants now bring this appeal, and we must affirm.

Appellants' sole point for reversal is that the chancellor erred in finding that the transaction was a lease and not a sale. One case is cited for this point, *Bell* v. *Itek Leasing Corp., supra.* In *Bell,* the Arkansas Supreme Court reversed a finding by the chancellor that a valid lease existed between the parties which purported to lease certain printing equipment to appellant for a term of five years. The court held that an overwhelming preponderance of the evidence showed that the purported lease was in actuality an installment sale contract and was void for usury. The court looked to five important facts which supported the finding that the purported lease was in actuality a sale:

1.   The defendant was in fact a finance company.

2.   The printed form of the lease put all of the risk upon the lessee. The lessee was further required to pay all the taxes and insurance upon the leased property and all the risk of loss or damage to the leased property.

3.   The contract provided the same remedies upon the lessee's default that would be available to a conditional seller or to a mortgagee on a similar delinquency.

4.   The contract expressly provided that the lessee would join the lessor in executing financial statements and "in the execution of such other instruments or assurances as lessor deems necessary or advisable for protection of the interest of the lessor in the equipment."

5.   The minimal amount the lessee would pay to acquire title after all the payments had been made

under the lease. The court held that if the amount was nominal, as it was in this case, then the transaction is patently a sale in lease's clothing.

In the instant case, many of the factors that were present in *Bell* are present here. First of all, there is some evidence in the record to support a finding that the appellee was, in fact, a financing company. Appellee did not own the cattle at the time the agreement was executed but rather purchased the cattle the following day. Appellants picked out all of the cattle which were purchased.

Secondly, the lease put all the risk of loss or damage to the leased property upon the lessee and further required the lessee to pay all licenses, fees, and taxes.

Thirdly, the contract provided many of the same remedies upon the lessee's default in the payment of rent that would be available to a conditional seller. The lease contained an acceleration clause and further required the execution of a mortgage upon appellants' property which also contained acceleration language. These remedies are very similar to those given a secured party. Fourth, the agreement did require appellants to execute financing Statements.

The last factor looked to in *Bell* was if the option to purchase at the end of the lease was a relatively small amount, then the transaction would be considered a sale rather than a lease. There is language in *Bell* to indicate that the most important factor in making the determination of the lease/sale distinction is the amount the lessee must pay at the end of the term in order to acquire title. In the instant case, appellants were given an option to purchase at the end of the lease for the fair market value of the cows. Appellants argue that there was testimony which indicated that the fair market value of the cows would have been diminished at the end of the five-year period. This testimony, however, did not give any definite value and we cannot speculate that it would have been a minimal amount to the extent that this transaction was a sale in lease's clothing.

We hold that the chancellor's finding that this agreement was a lease rather than as sale is not clearly against a preponderance of the evidence.

Affirmed.

CRACRAFT and COOPER, JJ., agree.